**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RICHARD SUMMERALL,

      Petitioner,

v.                                                                       Case No. 3:19-cv-1099-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

### I.   **Status**

Petitioner, Richard Summerall, an inmate of the Florida penal system,
initiated this action in the Northern District of Florida by filing a pro se Petition
Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.
Doc. 1. The Honorable Hope Thai Cannon, United States Magistrate Judge,
transferred this action to this Court. Doc. 3. Petitioner is proceeding on an
Amended Petition. See Doc. 9. He challenges a state court (Suwannee County,
Florida) judgment of conviction for burglary with an assault and resisting an
officer without violence. Petitioner is serving a thirty-year term of

incarceration. Respondents filed a Response. <u>See</u> Doc. 12 (Resp.).[1] Petitioner replied. <u>See</u> Doc. 13. This case is ripe for review.[2]

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u>

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

3

AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to seeking federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on

4

direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> [A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009).

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Procedural defaults may be excused at times. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier,

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).

[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

> 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

Without a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir.

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

**C. Ineffective Assistance of Trial and Appellate Counsel**

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

This two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). When considering deficient performance by appellate counsel,

8

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." <u>Id.</u> at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. <u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir.1986)); <u>see also</u> <u>Burger v. Kemp</u>, 483 U.S. 776, 784 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

<u>Id.</u>; <u>see also</u> <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 915 (11th Cir. 2009) ("failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong of an ineffective assistance of appellate counsel claim, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004); <u>see also</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal"). Also,

> [a] reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's

9

> errors must be "so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable." Id., at
> 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. As such, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under Strickland." Overstreet, 811 F.3d at 1287 (citation omitted).

For both claims of ineffective assistance of trial counsel and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court

10

decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see</u> <u>also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.  **Procedural History**

In 2014, a jury found Petitioner guilty of burglary with assault while armed and resisting an officer without violence. Resp. Ex. A at 83-84. The trial court sentenced Petitioner on the burglary conviction to a life term of incarceration with a ten-year minimum mandatory, and to time served on the second conviction. Resp. Ex. A at 110-19. With help from appellate counsel, Petitioner appealed and through a written opinion, the First District Court of Appeal reversed Petitioner's convictions and remanded for a new trial. Resp. Ex. K; <u>Summerall v. State</u>, 171 So. 3d 150 (Fla. 1st DCA 2015).

On remand, the state again charged Petitioner with burglary of a dwelling with an assault while armed and resisting an officer without violence.[6] Resp. Ex. L at 17. Before trial, Petitioner filed two motions to discharge counsel, both of which the trial court denied. Id. at 63-81, 107-12. Trial counsel filed a pretrial motion in limine to prevent the jury from using transcripts of jail telephone recordings to aid in their understanding of the recordings during trial. Id. at 83-84. The trial court denied that motion as well. Id. at 185-86.

At trial, the victim, Stacay Hawkins, testified that Petitioner is her ex-boyfriend. Resp. Ex. R at 38. Hawkins explained that on August 1, 2013, she and Petitioner broke up and Hawkins told Petitioner to never come back to her home. Id. at 39. According to Hawkins, however, Petitioner continued to come to her house uninvited. Id. at 40. Hawkins testified that on the morning of August 19, 2013, Petitioner showed up at her home with Hawkins's mother. Id. Hawkins stated that Petitioner was acting "wild, crazy" when he arrived and Hawkins asked him to leave. Id. at 40-41. Petitioner left, but later that evening, Petitioner returned to Hawkins's home and knocked on the door. Id. at 41. Petitioner announced his presence and Hawkins told Petitioner to wait as she put her three young children in a back room and called the police. Id. at 41-42.

---

[6] The state also charged Petitioner with possession of a firearm by a convicted felon, but that count was nolle prossed. Resp. Ex. L at 62.

Hawkins explained that Petitioner's presence alarmed her and she thought she would die. Id. at 42.

According to Hawkins, her seventeen-year-old son, Stacie, then came home from basketball practice and when Stacie opened the door and walked inside, Petitioner followed him in. Id. at 43. When Hawkins saw Petitioner inside, she asked him to leave. Id. Hawkins stated that instead of immediately leaving, Petitioner started looking around her house while asking Hawkins, "where he at, where he at, where he at." Id. Hawkins explained that she repeatedly asked Petitioner to leave and was attempting to back him toward the door when her phone rang, prompting Petitioner to snatch the phone out of her hand. Id. at 43-44. According to Hawkins, Petitioner finally started walking out, but quickly turned around and put his foot in the threshold, stopping her from closing the door. Id. at 44. She stated that Petitioner then stated, "I got something for you," while pulling a firearm out of his pocket. Id. When Hawkins saw the firearm, she began screaming and her and her son were able to forcibly shut the door and lock it. Id. at 45, 76. Hawkins explained that her home has a covered front porch and Petitioner's body was halfway in the doorframe and halfway on the covered porch when he displayed the firearm. Id. at 46. Hawkins testified that she thought she would die during the encounter with Petitioner and that she feared for her and her children's safety. Id. at 65.

Stacie testified that on the day of the incident, he returned home to find Petitioner standing in his front yard. Id. at 80-81. According to Stacie, Petitioner told Stacie that his mother asked Petitioner to come inside, so Petitioner followed Stacie as he entered the house. Id. at 81. Stacie explained he immediately went to his room and soon heard his mother screaming at Petitioner to "get out," and when Stacie ran to the front of the house, he saw Petitioner reluctantly walking toward the door while his mother followed him out and he and his mother then had to forcibly close the front door on Petitioner. Id. He explained that before he started helping her shut the door on Petitioner, Stacie heard his mother say something about a gun. Id. He stated it was not easy to get the door shut, and from where he was standing, he could not see Petitioner's hands. Id. at 82.

Officer Bradley Harrison testified that he was the officer who responded to Hawkins's 911 call on the day of the incident. Id. at 92-93. Harrison stated that when he arrived at Hawkins's residence, he saw Petitioner standing on the front porch of the home facing the door. Id. at 93. Harrison explained that Petitioner saw him pull up in his marked police car and Petitioner immediately began to run to the east side of the residence, away from Harrison. Id. at 95. Harrison pursued Petitioner on foot, briefly lost sight of him, and then apprehended him. Id. at 95-96. According to Harrison, when Petitioner was arrested, he was holding Hawkins's cell phone in his hand. Id. at 98. Harrison

14

searched Petitioner upon arrest and did not find a firearm on his person. However, another officer, Officer Derek Slaughter, found a firearm outside the east side of the residence in the exact location that Harrison lost sight of Petitioner during pursuit. Id. at 99-101. Slaughter testified that during Petitioner's arrest, Petitioner made a spontaneous statement that "if he gets out of jail [] he is going to kill Ms. Hawkins." Resp. Ex. S at 155. Petitioner also made the same spontaneous statement in the presence of Officer Alexis Hernandez, the officer who transported Petitioner to jail. Id. at 160.

Officer Lisa Long testified that she works at the Suwannee County Jail where Petitioner was housed before trial. Resp. Ex. S at 162-67. Long explained she reviews pretrial detainee phone calls and identified several recordings as jail phone calls between Petitioner and his mother and brother. Id. at 167-68. The state then advised the trial court that it intended to introduce some of the recorded phone calls as evidence and provide a transcript of each recording to the jury for identification purposes only and to aid it during the playing of the recordings. Id. at 168-69. Before the recordings were published to the jury, the trial court read an instruction advising that the recordings were evidence, and the transcripts were not evidence but only provided to help the jury when listening to the recordings. Id. at 178. It also advised that if the jury noticed a difference between what it heard on the recording and what it read in the transcript, it was to rely on what it heard. Id.

15

On the jail call recordings, Petitioner explained to his mother and brother that he "was jealous []and [t]hought another man was" at Hawkins's home when he showed up. Id. at 178. Petitioner also asked that his brother and mother contact Hawkins and ask her to drop the charges. Id. at 180. Following the jail recording, the state rested its case and trial counsel moved for judgment of acquittal. Id. at 187. The trial court denied the motion. Id.

Mary Summerall, Petitioner's mother, testified on behalf of Petitioner and stated that while Petitioner and Hawkins's were dating, Petitioner stayed at Hawkins's home more often than he stayed with her at his family home. Id. at 208. Petitioner testified that on the day of the incident, he went over to Hawkins's residence because he was living with her at the time. Id. at 208. He stated that he did not have a firearm and he did not go over to her home with the intention of committing a crime. Id. According to Petitioner, he did not force his way into the home but Hawkins's son let him in the house. Id. Petitioner testified that once inside, he did not threaten Hawkins but he did slap her cell phone out of her hand, picked it up, and told her he planned to search the phone. Id. Petitioner stated Hawkins never asked him to leave or forced him out the door. Id. He explained that he advised Hawkins that he "had something for her" and reached in his pocket to retrieve $70 to pay for her child's daycare bill. Id. at 209. According to Petitioner, he ran when the police arrived because he was on probation for driving with a suspended license and just panicked. Id.

Petitioner testified that he has five prior felony convictions. Id. at 210. Petitioner admitted that a few days before his arrest, he and Hawkins had a disagreement but denied that they broke up before the August 19th incident. Id. at 211-12. He also admitted that on August 19th, he thought Hawkins was seeing another man and had gone to her house to confront her, but claimed she never asked him to leave and he left on his own accord. Id. at 212. But Petitioner stated that while he was walking out, he turned, stuck his foot in the doorframe, and stopped Hawkins from closing the door. Id. at 214. After Petitioner testified, the defense rested and trial counsel renewed his motion for judgment of acquittal "with the same grounds[:] lack of evidence." Id. at 222-23. The trial court denied the renewed motion. Id. at 223.

Following closing arguments and the final charge to the jury, the jury found Petitioner guilty of the lesser included offense of burglary with an assault, with the finding that Petitioner did not possess a firearm during the commission of said offense (Count I); and resisting an officer without violence (Count II). Id. at 284. The trial court sentenced Petitioner to a thirty-year term of incarceration on Count I and time served on Count II. Resp. Ex. M at 202-13. Petitioner, with help from appellate counsel, sought a direct appeal. Resp. Ex. Z. The First DCA per curiam affirmed his judgment and sentences without a written opinion. Resp. Ex. CC.

## IV.   <u>Analysis</u>

### A. Ground One

Petitioner asserts his trial counsel was ineffective for failing to sufficiently argue a motion for judgment of acquittal. Doc. 9 at 3. He contends that the evidence showed Petitioner entered the residence with the victim's son's consent, and that trial counsel should have argued that the evidence also showed that "when the victim requested that [] Petitioner exit the residen[ce], [ ] Petitioner did not remain therein." <u>Id.</u> at 4. Petitioner argues that had counsel moved for an adequate judgment of acquittal, "there would have been sufficient argument for acquittal" and the trial court's denial of the motion would have been preserved for appellate review. <u>Id.</u>

Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. DD at 27. The trial court summarily denied the claim, finding as follows:

> In Ground 2, the Defendant argues that Counsel was ineffective for using a boilerplate argument in his motion for judgment of acquittal. The Defendant asserts that Counsel should have argued that the testimony adduced at trial indicated that the Defendant did not enter the home by force or surreptitiously, and that he left when asked to do so. The Defendant alleges that this error prejudiced the defense because there was not sufficient argument to justify acquitting the Defendant and because a sufficiency of the evidence claim was not preserved for appellate review.

18

> The Defendant has failed to prove prejudice. First, prejudice is assessed based on the deficient performance's effect on the results at trial, not on its effect on appeal. <u>Stonebridge v. State</u>, 1 So. 3d 1240, 1243 (Fla. 4th DCA 2009) (citing <u>Carratelli v. State</u>, 961 So. 2d 312, 313 (Fla. 2007)). Therefore, Counsel's conduct cannot be deemed prejudicial for failure to preserve a claim for appellate review.
>
> Furthermore, a motion for judgment of acquittal should only be granted if there is no view of the evidence from which a jury could make a finding contrary to that of the moving party. <u>Jeffries v. State</u>, 797 So. 2d 573, 580 (Fla. 2001). There may have been testimony adduced at trial that supported the theory that the Defendant did not enter the home by force or surreptitiously and left when asked to do so. However, there was also testimony by the victim that supported the theory that the Defendant did not leave when asked to do so. Because there was evidence from which a jury could possibly make a finding that the Defendant committed the burglary, the motion for judgment of acquittal was properly denied. Since the motion would not have been granted even if Counsel had made a sufficient argument, no prejudice resulted from Counsel's conduct.

Resp. Ex. DD at 40-41 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. JJ.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. The state charged Petitioner with burglary with an assault while armed. Burglary "means entering or remaining in a dwelling, a structure, or a conveyance with the intent

to commit an offense therein." § 810.02(1)(a), Fla. Stat. The theory of burglary here involved two elements – (1) Petitioner had permission or consent to enter the dwelling owned by or in the possession of Stacay Hawkins; and (2) Petitioner, after entering the dwelling, remained after permission to remain had been withdrawn and with intent to commit an assault inside the structure. Resp. Ex. S at 258-59; Resp. Ex. L at 17. "'Dwelling' means a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." § 810.011(2), Fla. Stat.

During trial, the victim, Stacay Hawkins, testified to the following:

> Q Did he eventually walk through the door or get close to the door?
>
> A Yes, ma'am.
>
> Q What happened when he was walking through the door?
>
> A He stopped.
>
> Q Did your phone ring?
>
> A Yes, ma'am.
>
> Q What happened when your phone rang?
>
> A He snatched it out of my hand and said: I am sick of this phone.

Q What happened after that?

A He went to the door. He went to walk out the door. When he turned around after he snatched the phone and I went to close the door and that['s] when he put his foot in the doorway to stop me from closing the door. And that's when he said I have got something for you - - I got something for you.

Q When he said I have got something for you, what did he do?

A He pulled out a gun.

Q Take your time.

A He pulled a gun out of his pocket. He pulled a gun out of his pocket.

Q I heard you say, I think, correct me if I am wrong, that he pulled a gun out of his pocket?

A Yes, ma'am, part of a gun out of his pocket, yes, ma'am.

Q Were you able to see part of that gun?

A Yes, ma'am.

Q What did you do when you saw the gun?

A I went to screaming: He got a gun. He got a gun.

. . .

Q Okay. Did anybody come help you?

A My son was behind me.

Q Stacie?

21

A Yes, ma'am. That is when I was hollering at Stacie about he had a gun, he has a gun. Stacie didn't know what was going on. He had just come from basketball practice.

Q Okay. Did the two of you try to push the door shut?

A Yes, ma'am. We managed to get it shut.

Q So at the time that he pulled the gun out of his pocket, where was he standing at?

A In the front of my door with his foot right there to the door.

Q Do you have a porch on your house?

A Yes, ma'am.

Q Is it covered?

A Yes, ma'am.

Resp. Ex. R at 43-46.

Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground One is denied.

### B. Ground Two

Petitioner asserts his trial counsel was ineffective for failing to argue during his motion for judgment of acquittal that "the [s]tate had failed to prove

22

that [ ] Petitioner had committed a burglary to a structure/dwelling." Doc. 9 at 5. He argues that "the [s]tate failed to put on any evidence that specifically provided that the place allegedly burglarized was designed to be occupied by people lodging therein at night." Id. Petitioner also claims that if trial counsel made these arguments rather than presented a boilerplate motion for judgment of acquittal, "there would have been sufficient argument for acquittal and the matter would have been preserved for direct appeal had the trial court denied the motion." Id.

Respondents argue that this claim is unexhausted and procedurally defaulted because Petitioner did not raise this claim in state court. Resp. at 38-39. Petitioner concedes that this claim is unexhausted but requests that the Court excuse the procedural default under the purviews of Martinez, because "the [s]tate failed to appoint an attorney to prepare Petitioner's motion for post conviction relief." Doc. 9 at 5; Doc. 13 at 6-8. Under Martinez, Petitioner must prove more than the general assertion that the trial court did not appoint counsel in the initial-review collateral proceeding. 566 U.S. at 14. Petitioner must "also demonstrate that the underlying ineffective assistance of trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. (citations omitted); see also Lambrix v. Sec'y Fla. Dept. of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). On the other hand, a claim is "insubstantial" if "it does not have any merit or . . . is

23

wholly without factual support." Id. at 16. For the reasons below, the Court finds that even if Petitioner shows that his lack of postconviction counsel caused his procedural default, he cannot show that his underlying ineffective assistance of counsel claim is substantial.

As discussed, "'[d]welling' means a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." § 810.011(2), Fla. Stat. The trial court instructed the jury on this definition. Resp. Ex. S at 261-62. Whether the building Petitioner was alleged to have burglarized was a "dwelling" was never a disputed issue at trial. In fact, to try to show he entered Hawkins's home with consent, Petitioner testified that he lived with Hawkins at the subject location. Id. at 208-10, 212-13, 216. And he also presented his mother's testimony that Petitioner stayed at Hawkins's home more often than he stayed at his family home. Id. at 208. Hawkins made several references to the subject building being her "home" or "residence." Resp. Ex. R at 39-43, 45-47, 53, 65,67-70. She stated that on the night of the incident, before Petitioner walked inside, she put her children to sleep in the home. Hawkins also testified that her "home" had a covered front porch directly attached to the front door of the residence and that Petitioner put

24

his foot in the front door to prevent it from closing after he was told to leave. Id. at 45-46. The state also introduced photographs of the house. Id. at 46.

Upon thorough review of the record, the Court finds there was ample evidence to support the charge that Petitioner burglarized a "dwelling." Thus, even if Petitioner shows that his lack of postconviction counsel caused his procedural default, he cannot show that his underlying ineffective assistance of counsel claim is substantial to establish prejudice under Martinez. Likewise, Petitioner has failed to demonstrate that failure to consider this claim on the merits will result in a fundamental miscarriage of justice. Ground Two is unexhausted and procedurally defaulted, and is therefore due to be denied.

### C. Ground Three

Petitioner asserts that his trial counsel was ineffective for failing to argue during his motion for judgment of acquittal that "the [s]tate failed to refute [] Petitioner's hypothesis of innocence." Doc. 9 at 6. Petitioner argues that the state's theory of the case was that Petitioner committed a burglary to commit an assault therein, and presented the victim's testimony that Petitioner arrived at her house and informed her that he had something for her while pulling the butt of a gun out of his pocket. Id. Petitioner contends his trial testimony refuted that evidence because he testified that he was reaching into his pocket to give her $70 to pay for her child's daycare. Id. He contends that the jury found he did not possess a firearm during the incident and Petitioner offered testimony

that his statement was not a threat. Id. According to Petitioner, the state failed to present any evidence not circumstantial or inconsistent with Petitioner's hypothesis of innocence and had counsel argued this point during his motion for judgment of acquittal, the motion would have been granted. Id., Doc. 13 at 8-9.

Respondents argue that Petitioner never presented this claim in state court and thus it is unexhausted and procedurally defaulted. Resp. at 46-50. Petitioner concedes that this claim is unexhausted but requests that the Court overlook the procedural default under the purviews of Martinez because the state court did not appoint him a postconviction attorney. Doc. 9 at 6; Doc. 13 at 8. However, for the reasons below, the Court finds that even if Petitioner shows that his lack of postconviction counsel caused his procedural default, he cannot show that his underlying ineffective assistance of counsel claim is substantial to establish prejudice under Martinez.

Petitioner's ineffective assistance of counsel claim turns on the applicability of Florida's circumstantial evidence rule. Doc. 13 at 8-9. That rule provides that "if the state's evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence." Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002). However, the Due Process Clause of the Fourteenth Amendment requires the state to prove each element

of the offense charged beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 315 (1979). Under <u>Jackson</u>, federal courts must look to state law for the substantive elements of the offense but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause. <u>Coleman v. Johnson</u>, 566 U.S. 650 (2012). Unlike the Florida standard, the federal sufficiency of the evidence standard in <u>Jackson</u> does not include a requirement that cases turning on circumstantial evidence exclude every reasonable hypothesis of innocence. <u>See</u> <u>United States v. Herrera</u>, 931 F.2d 761, 763 (11th Cir. 1991) (evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt) (citations omitted). Rather, for federal due process review, "[t]he [only] relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319.

Here, evidence was presented at trial that Petitioner entered Hawkins's house, did not immediately leave when asked, and forcibly held the front door open with his foot. Hawkins testified that while Petitioner was holding the door open, he showed her a gun. Hawkins also testified that she was in fear of her life throughout the encounter. Also, when police arrived, Petitioner temporarily

evaded arrest by running around the house, and the pursuing officer briefly lost sight of Petitioner during the pursuit. After arrest, a firearm was located in the exact location the officer lost sight of Petitioner. Thus, taking the evidence in the light most favorable to the state, Petitioner cannot show that the outcome of his motion for judgment of acquittal would have been different if trial counsel had argued the evidence was only circumstantial. Because Petitioner's allegations that trial counsel performed deficiently lack factual support and are meritless, his <u>Strickland</u> claim is insubstantial, and <u>Martinez</u> does not excuse his default. Likewise, Petitioner has failed to demonstrate that failure to consider this claim on the merits will result in a fundamental miscarriage of justice. Ground Three is denied.

### D. Ground Four

Petitioner asserts his trial counsel was ineffective for failing to "renew[] his motion for a judgment of acquittal pursuant to Rule 3.380(c) Fla. R. Cr. P. and set out the fact that the jury's finding on the verdict form that [Petitioner] did not possess a firearm negated the required element for a jury's finding that [Petitioner] committed [an] assault, because the assault was based on the allegation that the Petitioner had pulled out a firearm." Doc. 9 at 7. According to Petitioner, "[t]he jury arrived at a legally inconsistent verdict." <u>Id.</u> He also argues that no evidence was presented that showed he threated Hawkins or that she experienced a well-founded fear. <u>Id.</u> at 8.

28

Respondents argue that Petitioner's claim that the verdict is "truly inconsistent" is a variation of the claim Petitioner raised in ground three of his Rule 3.850 motion and presented in Ground Six of the Amended Petition. Resp. at 51. At the same time, Respondents argue that to the extent that Petitioner argues his trial counsel was ineffective for failing to make a renewed motion for judgment of acquittal after the jury's verdict, that claim is unexhausted and procedurally defaulted. Id. They also argue that for the same reasons discussed in Ground Six, any unexhausted aspect of this claim lacks merit and therefore Martinez does not apply to excuse any procedural default.

Petitioner appears to concede that this claim is unexhausted and again seeks to overcome any procedural default under Martinez. But upon review of his Reply, the Court finds that the crux of Petitioner's claim here depends on allegations of an "inconsistent verdict." Doc. 13. Specifically, Petitioner argues that the state's "assault" element was solely based on Petitioner's alleged possession of a firearm, and the jury's finding that Petitioner did not carry a firearm during the offense negated that element and rendered its finding that Petitioner committed a burglary with an assault "inconsistent." See generally Doc. 13. As the Court discusses in Ground Six, to establish burglary with an assault, the state did not have to prove that the assault was committed with a deadly weapon. The jury's finding that Petitioner did not possess a firearm does not negate Petitioner's apparent ability to carry out a threat or that the victim

had a well-founded fear that violence was imminent. Thus, Petitioner's allegation that the jury rendered an "inconsistent verdict" lacks factual support and is meritless. His <u>Strickland</u> claim here is insubstantial, and <u>Martinez</u> does not apply to excuse the procedural default of any unexhausted allegation here. And if any part of this claim is exhausted, it lacks merit for the reasons discussed in Ground Six. Thus, Ground Four is denied.

### E. Ground Five

Petitioner asserts his trial counsel was ineffective for failing to impeach the victim with her prior inconsistent statements. Doc. 9 at 9. According to Petitioner, during trial, Hawkins testified that Petitioner walked into her home behind her son. <u>Id.</u> But Petitioner contends that in her prior written statement, she stated Petitioner "busted into her home." <u>Id.</u> He argues counsel should have attacked Hawkins's credibility using these inconsistent statements.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. DD at 20. The trial court summarily denied the claim:

> In Ground 1, the Defendant argues that Counsel was ineffective for failing to impeach the victim with a prior inconsistent statement. The Defendant asserts that the victim made statements at trial which were inconsistent with the written statement she gave to law enforcement officers. These statements directly related to how the Defendant got into the victim's home. Therefore, Counsel should have impeached the victim with her written statement to point out the inconsistency in the statements. Although Counsel "went to great lengths" to show these inconsistencies

during Officer Bradley Harrison's testimony, Defendant contends that Counsel's performance is still deficient because using Officer Harrison to introduce the inconsistent statement had "substantially less" impact than it would have had if Counsel had introduced the statement using the victim herself.

This Court is not persuaded by the Defendant's argument that the person used to introduce an inconsistent statement made a difference as to impact on the jury. The Defendant has not explained why the statement would have more impact if introduced during the victim's testimony. No matter who was on the stand when the inconsistent statement is introduced, the jury was exposed to the inconsistent statement. Counsel was not deficient in presenting the inconsistency of the statements to the jury. Counsel made it very clear during Officer Harrison's testimony that the victim wrote that the Defendant "busted" into her home. During closing argument, Counsel said as follows:

> Let me point out a couple of inconsistencies in Ms. Hawkins'[s] testimony. First, in her statement to the police, Officer Harrison, on the 19th of August, she said that Mr. Summerall busted in her home but she also said today in trial that Mr. Summerall just simply followed her son into the house. She really did not witness Mr. Summerall come in at all. The testimony of her son, Stacie Hawkins, was that she was in the back bedroom when the son and Mr. Summerall came into the house.

Counsel sufficiently brought the inconsistent statements to the jury's attention, such that impeaching the victim with the statements would not have made a "substantially greater" impact.

Accordingly, Ground 1 is denied.

31

Resp. Ex. DD at 39-40 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. JJ.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Further, during counsel's cross-examination of the victim, counsel impeached her based on these inconsistent statements. Indeed, counsel elicited testimony from the victim that on August 19, 2013, she advised police that Petitioner "busted" into her apartment, and that her prior description was inconsistent with her trial testimony that Petitioner walked into her apartment. Resp. Ex. at 67. Considering this record evidence, the Court finds counsel's conduct was not deficient and Petitioner cannot demonstrate prejudice under Strickland. Ground Five is denied.

**F. Ground Six**

Petitioner asserts his trial counsel was ineffective for failing to argue for a sentence reduction "in light of the fact that when the jury found that

[Petitioner] did not possess a firearm, this negated the essential element of fear which rendered the verdict truly inconsistent and counsel should have sought a sentence for a lesser offense of trespass." Doc. 9 at 10. According to Petitioner, the jury's finding that Petitioner did not possess a firearm negated the element needed for assault, yet the trial court still adjudicated him guilty for a first degree felony that carried that same punishment. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. DD at 28. The trial court summarily denied the claim, finding as follows:

> In Ground 3, the Defendant argues that Counsel was ineffective for failing to move for a sentence for a lesser-included offense when the jury's finding that the Defendant did not possess a firearm negated an element of the offense of which he was convicted. The Defendant alleges that the testimony at trial shows that the victim did not become fearful and tell the Defendant to leave until the Defendant allegedly showed her a gun. The Defendant asserts that the jury's finding the Defendant did not possess a firearm removed an element of the victim being in fear of imminent danger and the Defendant's ability to carry out the threat of harm.

> The Defendant was convicted of Burglary with an Assault. Assault is proven if the State proves the following three elements: (1) an intentional, unlawful threat, (2) an apparent ability to carry out the threat, and (3) creation of a well-founded fear that the violence is imminent. H.W. v. State, 79 So. 3d 143, 145 (Fla. 3d DCA 2012). The Defendant cites Gerald v. State, 132 So. 3d 891 (Fla. 1st DCA 2014), as support for his argument that the finding that the Defendant did not possess a firearm negates the second and third elements of assault. However, Gerald v. State does not

support his argument. Rather, the court in <u>Gerald v.</u> <u>State</u> held that a finding that the defendant did not possess a firearm negated a conviction of aggravated assault, since aggravated assault can only be established if an assault was committed with a deadly weapon, and the only deadly weapon presented during the case was a firearm. <u>Id.</u> at 891. [FN1]

> [FN1] Although aggravated assault can also be established if an assault was committed with an intent to commit a felony, the jury in <u>Gerald v. State</u> was only instructed on aggravated assault with a deadly weapon. <u>Id.</u>

The Defendant was convicted of Burglary with an Assault, not Burglary with an Aggravated Assault. As such, the State did not have to prove that the assault was committed with a deadly weapon. A finding that the Defendant did not possess a firearm does not negate the Defendant's apparent ability to carry out a threat and the victim's well-founded fear that the violence was imminent. Even if there was no firearm, there was enough evidence from which the jury could conclude that the victim had a well-founded fear that the Defendant was going to harm her, and that the Defendant had the ability to do so. Since a finding that the Defendant did not possess a firearm was not inconsistent with a conviction of Burglary with an Assault, any motion by Counsel would have been fruitless. Counsel cannot be deemed [ineffective] for failing to make a meritless motion. <u>Raleigh v. State</u>, 932 So.2d 1054, 1064 (Fla. 2006).

Accordingly, Ground 3 is denied.

Resp. Ex. DD at 41 (record citations omitted). Petitioner appealed, and the First

DCA per curiam affirmed the summary denial without a written opinion. Resp.

Ex. JJ.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Six is denied.

### G. Ground Seven

Petitioner asserts his trial counsel was ineffective for failing to call Officer Douglas Hohman as a defense witness at trial. Doc. 9 at 11. According to Petitioner, during closing arguments, the state made comments about an incident that occurred on August 1, 2013, suggesting Petitioner trespassed on Hawkins's property that day. <u>Id.</u> Petitioner argues these comments implied that on the day of the alleged offense, August 19, 2013, Petitioner intentionally violated the prior trespass warning. <u>Id.</u> Thus, Petitioner contends trial counsel should have called Officer Hohman as a witness who would have testified that no trespass warning was ever issued to Petitioner before the offenses. <u>Id.</u>

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. DD at 30-33. The trial court summarily denied the claim, finding a follows:

> In Ground 4, the Defendant argues that Counsel was ineffective for failing call Officer Douglas Hohman to testify that no trespass warning was ever issued to

the Defendant prior to the date of the offense in this case. During opening and closing argument, the State referred to the Defendant trespassing on the victim's property, improperly indicating that the Defendant was intentionally violating the trespass warning issued by the Live Oak Police Department. Counsel's error prejudiced the Defendant because had Officer Hohman testified, Counsel could have conclusively shown that the State's reference to the Defendant's trespassing was a fabrication intended to incite the jury's passion. The Defendant alleges that Officer Hohman's testimony would have created a serious doubt as to the veracity of the allegations against the Defendant.

The Court knows of no statute or law requiring a defendant to be given a trespass warning by law enforcement in order for the defendant to be considered to have trespassed. Regardless, nothing in the State's opening or closing argument implied that the Defendant intentionally violated a trespass warning issued by the Live Oak Police Department. Counsel cannot be deemed deficient for failing to call a witness to rebut this non-existent implication.

Accordingly, Ground 4 is denied.

Resp. Ex. DD at 42. Petitioner appealed, and the First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. JJ.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable

determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Seven is denied.

### H. Ground Eight

Petitioner asserts his appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court erred in allowing the jury to use transcripts as visual aids during the presentation of the jail phone recordings.[7] Doc. 9 at 12. According to Petitioner, the trial court allowed the parties to provide a transcript of the recordings to help the jury understand the tapes. Id. He argues that while the trial court instructed the jury to rely on what it heard rather than what was written in the transcripts, the recording was so inaudible that the jury had no choice but to rely on the transcripts. Id. Petitioner argues the transcripts were prejudicial since they were "basically the Court Reporter's interpretation of what was said during the inaudible portions of the recordings." Id. at 12. He asserts that appellate counsel should have argued on direct appeal that "where a partially inaudible tape recording is played for the jury, neither a written nor oral interpretation of the inaudible portion of the [recording] is admissible unless such interpretation is properly authenticated by a person having knowledge of the contents of the [recording] or by an expert . . . ." Id.

---

[7] Although Petitioner labels Ground Eight as a claim that appellate counsel was ineffective for failing to challenge on direct appeal the trial court's admission of the recordings, a reading of the allegations shows he is challenging the use of the transcripts. Doc. 9 at 12.

For context, the Court provides a relevant summary. Before trial, trial counsel moved to exclude or prevent the jury from seeing "[t]he transcript of the audio recorded telephone calls/jail visits which may be introduced as evidence at trial." Resp. Ex. L at 83-84. In support of the request, trial counsel argued that the state failed to present evidence showing that the individual who transcribed the call, Deborah Powel Kennedy, was an expert in interpreting inaudible tape recordings, nor did the state properly authenticate the conversations with a witness having personal knowledge of the recorded conversation. Id. The trial court conducted two hearings on the issue. Resp. Exs. W at 18-25; Q at 1-8. It then denied trial counsel's request, finding as follows:

1. This Motion was first heard in open court on November 5, 201[5]. At that time the Court heard argument from the Defense and the State. The Court also received case law from both parties. The Defense provided the Court with Harris v. State, 619 So. 2d 340 (1st DCA, 1993), and the State provided the Court with Martinez v. State, 761 So. 2d 1074 (Fla. 2000).

2. After hearing argument from both sides and considering Martinez the Court ruled that the issue of whether the audio tapes were audible and able to be transcribed was an issue of fact for the Court to determine. Pursuant to that, the Court reserved ruling and obtained a copy of the audio C.D. and transcript from the Clerk of Court.

3. After the Court had an opportunity to review the audio C.D. and transcript, a second hearing was conducted in chambers on January 26, 2016. At that time, the Court again heard argument from the Defense and the State.

38

4. Based on the Court's review of the audio C.D. and transcript the Court finds:

    a. The recordings are generally audible.
    b. The transcripts are consistent with the recordings and the few portions of the audio C.D. that are inaudible are notated as inaudible in the transcript.

Based on the foregoing, and pursuant to the holding in <u>Martinez</u>, the Defendant's Fourth Motion in Limine to Exclude Evidence is hereby:

DENIED and upon proper authentication of the audio C.D. by the State, the State will be permitted to disseminate copies of the transcript during the trial to aid the jury in following the recordings. The Court will instruct the jury pursuant to Florida Standard Jury Instruction 2.6 at the proper time in the trial.

Resp. Ex. L at 185-86. At trial, trial counsel did not renew his objection to the jury's use of transcripts, but focused exclusively on the admission of the recordings themselves based on their authentication through the testimony of Investigator Long. Resp. Ex. S at 172-76. After this objection was overruled, the trial court instructed the jury just before the recordings were published:

    Members of the jury, you're about to listen to an audio recording. The Court instructs you that the recording has been edited to eliminate irrelevant portions that would not add to your understanding of this case. The fact that the recording has been edited should not concern you in any way and must not impact the way you listen to and consider the evidence. You're about to hear that recorded conversation as I indicated. The recorded conversations are proper evidence and you may consider them just as any other evidence.

> You're also being furnished transcripts of the recorded conversations. The recordings are the evidence and the transcripts are provided to you only as a guide to help you understand and listen to the recordings. The transcripts are not evidence of what was actually said or who said it. If you notice any difference between what you hear on the recordings and what you read in the transcripts you must rely on what you heard, not what you read.

Resp. Ex. S at 177. On direct appeal, appellate counsel raised two grounds for relief, one of which was "[w]hether the trial court erred in admitting testimony of Long as to how the jail phone calls, identified by family members, were retrieved in the first place . . . ." Resp. Ex. Z.

Petitioner now argues that appellate counsel should have challenged on direct appeal the trial court's denial of trial counsel's request to omit the use of the transcripts as visual aids during the presentation of the jail recordings. Doc. 9 at 12. Petitioner raised this claim in his pro se petition for writ of habeas corpus filed with the First DCA under Florida Rule of Appellate Procedure 9.141(d). Resp. Ex. KK at 3-5. The First DCA issued a one-line order denying the petition "on the merits." Resp. Ex. OO.

The First DCA's adjudication of this claim is entitled to AEDPA deference. And the Court gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal. The danger of raising weaker issues in a "kitchen-sink" approach is that it detracts from

the attention an appellate court can devote to the stronger issues and reduces appellate counsel's credibility. See Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); see also McBride v. Sharpe, 25 F.3d 962, 973 (11th Cir. 1994). Thus, effective appellate attorneys "will weed out weaker arguments, even though they may have merit." Philmore, 575 F.3d at 1264; see also Overstreet, 811 F.3d at 1287. Appellate counsel's failure to raise a meritless or weaker issue does not constitute deficient performance. See Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)); Owen, 568 F.3d at 915. Prejudice results only if "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1264-65.

First, "[a]s a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court unless rulings deny petitioner fundamental constitutional protections). Thus, Petitioner's underlying challenges to the state's court's determination on the

admissibility the jail phone call recordings themselves are not generally proper for this Court's consideration.

To the extent that Petitioner challenges the use of the transcripts, the Court addresses this ineffective assistance of appellate counsel claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court defers to the state court's finding that Petitioner failed to show prejudice. Indeed, the transcripts of the calls were only used as a demonstrative aids; they did not go back to the jury room during deliberations; and the trial court properly instructed the jury that the transcripts were not evidence. As such, Petitioner has not shown that the outcome of his appeal would have been different if appellate counsel challenged the use of the transcripts. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Eight is denied.

**I. Ground Nine**

Petitioner asserts that his appellate counsel was ineffective for failing to raise on direct appeal a claim challenging the prosecutor's improper opening and closing arguments suggesting Petitioner trespassed on Hawkins's property

on August 1, 2013, and that his presence on the property on August 19, 2013, during the subject burglary violated a court ordered injunction. Doc. 9 at 13. According to Petitioner, the prosecutor's statements were false and misled the jury to conclude that Petitioner's mere presence on the property was illegal.[8] Id.

Petitioner raised this claim in his petition filed with the First DCA. Resp. Ex. KK at 5-8. The First DCA issued a one-line order denying the petition "on the merits." Resp. Ex. OO. The First DCA's adjudication of this claim is entitled to AEDPA deference. And again, the Court gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal.

As discussed before, nothing in the state's opening or closing arguments suggested Petitioner intentionally violated a trespass warning when he went to Hawkins's home on August 19, 2013. During opening arguments, the state only mentioned August 1, 2013, as the date Hawkins broke up with Petitioner and never mentioned an alleged trespassing report. See Resp. Ex. S at 24-29. Likewise, during the state's initial closing argument, it did not reference any trespassing incident that allegedly occurred on August 1, 2013. Resp. Ex. S at 230-41. In its rebuttal argument, the state only referenced the term "trespass"

---

[8] Petitioner challenged these same comments in Ground Seven of the Amended Petition when he argued trial counsel was ineffective for failing to call Officer Hohman to testify that there was no record that Petitioner trespassed on Hawkins's property before that day.

in response to trial counsel's closing argument that Petitioner was only guilty of the lesser included offense of trespass for his actions on August 19, 2013. Id. at 247-58. The state mentioned the events of August 1, 2013, only to summarize Hawkins's trial testimony that she and Petitioner broke up on August 1, 2013. Id. at 251-52. The state never improperly referenced a nonexistent prior trespass report. As such, there were no objectionable comments appellate counsel could have challenged on appeal. Petitioner cannot show deficient performance, nor can he show that but for appellate counsel's alleged failure, the outcome of his appeal would have been different. Thus, the Court finds that the state court's adjudication of this claim was not contrary to nor an unreasonable application of Strickland and it was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Nine is denied.

## J. Ground Ten

Petitioner asserts his appellate counsel was ineffective for failing to raise a claim on direct appeal that the trial court abused its discretion when it denied Petitioner's two requests to discharge court appointed counsel. Doc. 9 at 14. Petitioner argues he filed two pro se motions under Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA), requesting to discharge appointed counsel, Nathan Marshburn, and appoint conflict-free counsel because Marshburn worked at the same Public Defender's Office as Petitioner's prior attorney, Steve Woods, who

44

was dismissed because of his ineffectiveness. <u>Id.</u> According to Petitioner, the Public Defender's Office is the equivalent of a law firm and if one public defender has a conflict of interest, the conflict is imputed to the entire office. <u>Id.</u> at 14-15.

Petitioner raised this issue in his petition filed with the First DCA. Resp. Ex. KK at 8-9. The First DCA issued a one-line order denying the petition "on the merits." Resp. Ex. OO. The First DCA's adjudication of this claim is entitled to AEDPA deference. And again, the Court gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal.

The trial court conducted a hearing on Petitioner's first pro se request to discharge Marshburn and appoint conflict-free counsel on November 16, 2015. <u>See</u> Resp. Ex. L at 63-64; Resp. Ex. N at 1. During the November 16th hearing, the following exchange occurred in relevant part:

> THE DEFENDANT: Like I said, . . . it is a conflict of interest with Steve Woods was representing me in the first case. He was a public defender and they both are from the same firm and I feel like that was a conflict of interest right there about his representing me.
>
> . . .
>
> THE COURT: And you are saying Mr. Woods represented you in the first trial and he worked at that time for the public defender?

THE DEFENDANT: Yes, sir. They dismissed him because I filed a bar complaint on Mr. Woods because he was lying to me about the fingerprints being on the gun. I wrote a bar complaint – I filed a bar complaint against him and I think –

. . .

THE DEFENDANT: Steve Woods was representing me. He represented me up until February 4. That's when Mr. Marshburn took over.

THE COURT: Did you ask that Mr. Woods be removed from your case?

THE DEFENDANT: No. I didn't ask for it but they removed him and then he –

THE COURT: They who?

THE DEFENDANT: I guess the state just removed him from the case.

[THE PROSECUTOR]: Your Honor, I think if I could clarify, in February of I believe it was 2014 when the first case went to trial, Mr. Woods had been the felony public defender for Division B. He moved and Mr. Marshburn became full-time public defender for Division B. I don't believe any of that had anything to do with Mr. Summerall's case, it was just coincidence that it was the same month as his trial.

THE COURT: Mr. Summerall says the state must have, the state had no activity in that.

[THE PROSECUTOR]: The state had absolutely nothing to do with it.

THE COURT: Does that help?

THE DEFENDANT: No, it doesn't.

46

. . .

THE COURT: What did you want to say next?

THE DEFENDANT: I am not trying to be rude. Like I said, I am just trying to like –

THE COURT: It would be best if you weren't rude.

THE DEFENDANT: I understand. Like I said, I feel that when Mr. Stephen Woods was dismissed and both public defenders are from the same law firm I thought by me filing this bar complaint against him that was being retaliation from the law firm.

THE COURT: Mr. Marshburn, do you know if Mr. Woods moved away or was no longer available to represent Mr. Summerall?

MR. MARSHBURN: Your Honor, it was an internal decision within our office that Mr. Woods become the county attorney for Suwannee County and I move to Division B.

THE COURT: Would you agree the state, that is, the State of Florida, the prosecutor had nothing to do with that?

MR. MARSHBURN: That's correct.

THE COURT: Does that help you understand it better, Mr. Summerall?

THE DEFENDANT: No, sir.

. . .

THE COURT: . . . What else did you want to tell me?

47

> THE DEFENDANT: Like I was asking about getting Mr. Marshburn dismissed from the case.
>
> THE COURT: Yes, I remember that was the subject.
>
> THE DEFENDANT: The reason why –
>
> THE COURT: You said something about there was another attorney in his case that got off from the case and I was told about how that other attorney got off the case because he changed divisions. He was no longer in the division to handle your case and then Mr. Marshburn got into the case. It has absolutely nothing to do with the state. The state didn't have anything to do with removing that person. That was an internal decision of the public defender's office. That's how Mr. Marshburn got on to this case. That's my understanding. Mr. Marshburn, am I understanding that correct?
>
> MR. MARSHBURN: That's correct, Your Honor.

Resp. Ex. N at 124-16, 24-25. Following the hearing, the trial court denied Petitioner request, finding that Petitioner's concerns did not give rise to the dismissal of counsel. Resp. Ex. L at 94.

Petitioner filed his second pro se request to discharge Marshburn and appoint conflict-free counsel on November 30, 2015. Id. at 107-12. The trial court held a hearing on the motion. Resp. Ex. W at 3-7. During the hearing, Petitioner requested that the trial court appoint conflict-free counsel because Marshburn and Petitioner's previous attorney, Woods, worked at the same public defender's office. Id. at 6. The prosecutor advised the trial court that Petitioner had filed a previous motion based on the same alleged conflict and

that the trial court denied that previous motion. <u>Id.</u> at 7. After considering this argument, the trial court denied Petitioner's pro se motion, explaining the issue had "already been addressed." <u>Id.</u>

Contrary to Petitioner's understanding, the attorney who represented Petitioner during his first trial (Woods) did not represent Petitioner during his second trial because of an internal decision within the Public Defender's Office, unrelated to Petitioner, that Woods become the county court attorney for Suwannee County. Upon Woods's move, Marshburn moved into felony Division B and took over Petitioner's case just in time for his second trial. On this record, there was no appearance of a conflict of interest nor any indication that any alleged conflict affected Marshburn's representation of Petitioner. Thus, Petitioner cannot show appellate counsel acted deficiently in failing to raise this issue on appeal, nor can he show that but for appellate counsel's alleged failure, the outcome of his appeal would have been different. The Court finds that the state court's adjudication of this claim was not contrary to, nor did it involve an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Ten is denied.

**K. Ground Eleven**

Petitioner "incorporates [G]rounds (1-10) into this claim and provide[s] that he was denied a fair trial based upon counsel's cumulative error . . . ." Doc.

9 at 16. Petitioner raised a version of this claim in his Rule 3.850 motion. Resp. Ex. DD at 17. But because he did not fully exhaust each of the ten grounds raised in the Amended Petition, Petitioner's current claim of cumulative error based on Grounds One through Ten of the Amended Petition is not fully exhausted. In any event, even assuming this claim is fully exhausted and properly before the Court, Petitioner is still not entitled to relief because the claim lacks merit.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of Petitioner's individual claims of error or prejudice have merit, Petitioner's cumulative error claim cannot stand. See United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument

that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Ground Eleven is denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     The Amended Petition (Doc. 9) is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

---

[9] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

51

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of August, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Richard Summerall, #389024
       Counsel of record

52